IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| GONZA LLC,<br>      *Plaintiff*<br><br>-vs-<br><br>MISSION COMPETITION FITNESS<br>EQUIPMENT LLC,<br>      *Defendant* | W-21-CV-00771-ADA |

## ORDER GRANTING PRELIMINARY INJUNCTION

Before the Court is Plaintiff Gonza LLC's Motion for Preliminary Injunction (the "Motion"), filed October 29, 2021. ECF No. 11. Defendant Mission Competition Fitness Equipment LLC filed its Response on November 11, 2021. ECF No. 15. Due to the nature of the allegations in the Complaint and Motion, as well as the relationship of the parties as direct competitors in essentially a two-party market, the Court quickly held a hearing on November 12, 2021. In short, Gonza requests this Court enjoin MCF from continuing to infringe the '405 Patent by selling its Iron Neck Alpha device. After due consideration of the briefs and arguments held at the hearing, the Motion is **GRANTED**.

### I.   BACKGROUND

On July 28, 2021, Plaintiff Gonza LLC ("Gonza" or "Plaintiff") filed suit in the Waco Division of the Western District of Texas, seeking injunctive relief and damages arising out of alleged infringement of its U.S. Patent No. 11,007,405 (the "'405 Patent"). Gonza states that it developed the '405 Patent, a neck exercise device used with resistance bands, to improve neck exercise capabilities. For over two years, Gonza invested in developing this new line of equipment under the "Neck Flex" brand. The improvements include vertically oriented D-rings

1

on quadrants of the harness and multiple rotatable attachment members. According to Gonza, this provided new neck training options previously unavailable from prior pieces of equipment. Gonza alleges it saw initial success until Mission Competition Fitness Equipment LLC ("MCF" or "Defendant") intervened and released its own line entitled the "Iron Neck Alpha." Gonza claims MCF's Iron Neck Alpha equipment device directly copies Gonza's Neck Flex. Gonza states that the Iron Neck Alpha harness even copies the stitch pattern of the Neck Flex. However, Gonza notes an important difference—that MCF uses inferior materials and has therefore sold the Iron Neck Alpha at a significantly lower price than the Neck Flex. Allegedly, this has eroded the market price, created a loss of goodwill, and caused extreme negative effects on Gonza's business.

## II.     LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. Fed. R. Civ. P. 65. The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).

In the Fifth Circuit, the test for whether a preliminary injunction is proper has four parts. The moving party must establish each of the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury to the applicant out-weighs the threatened harm to the party sought to be enjoined; and (4) granting the injunction will not disserve the public interest. *See Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). *See also Tinnus Enters., LLC v.*

*Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017) (applying the law of the regional circuit).

"None of the four requirements has a fixed quantitative value." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 582 (E.D. La. 2016) (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). "Therefore, in applying the four part test, 'a sliding scale is utilized, which takes into account the intensity of each in a given calculus.'" *Id.* (citing *Seatrain*, 518 F.2d at 180). "This requires 'a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that could possibly flow from the denial of preliminary relief.'" *Id.* (citing *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3d Cir. 1984)). "When the other factors weigh strongly in favor of an injunction, 'a showing of some likelihood of success on the merits will justify temporary injunctive relief.'" *Id.* at 585 (citing *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 685 (5th Cir. 1980)). "However, no matter how severe and irreparable the threatened harm and irrespective of the hardships in which a preliminary injunction or lack of one might cause the parties, 'the injunction should never issue if there is no chance that the movant will eventually prevail on the merits.' " *Id.* (citing *Seatrain*, 518 F.2d at 180).

### III.   ANALYSIS

The Court considers whether Gonza can satisfy each of the elements necessary for preliminary injunctive relief as follows.

#### A.   Substantial Likelihood of Success

"A movant need not prove it is entitled to summary judgment in order to show a likelihood of success." *Miner Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 695 (W.D. Tex. 2019).

Instead, the movant must present a *prima facie* case. *Id.* Thus, the inquiry is directed to the substantive merits of the claim, but not any potential procedural barriers. *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011). Regarding patent infringement, a plaintiff must show it will likely prove infringement on at least one claim and that it can likely withstand invalidity challenges. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). To meet its burden, a patentee must prove that "success in establishing infringement is more likely than not." *Trebo Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (internal quotation marks omitted). The Court addresses the infringement and validity elements in turn below.

### 1. *Infringement*

Courts engage in a two-step analysis to determine whether infringement has occurred: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). "To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). Gonza claims MCF infringes claim 1 of the '405 Patent, which reads as follows:

> What is claimed is:
> 1. A neck exercise device comprising:
> a head harness having an adjustable headband, wherein the adjustable headband includes a headband adjust-ment member including at least one of a slide portion and a hook and loop portion, and wherein the adjustable headband has a circumferential length along a first axis and a width along a second axis perpendicular to the first axis;
> a first cranial strap having each end attached to the adjustable headband;
> a second cranial strap having each end attached to the adjustable headband;
> an adjustable chin strap, wherein the adjustable chin strap includes an adjustment member with an adjustable pad configured to slide along the adjustable chin strap; and

> a plurality of attachment members mounted to the adjustable headband, wherein each attachment member is mounted to the adjustable headband in a vertical ori-entation parallel to the second axis, and wherein each attachment ring in configured to rotate about the vertical orientation parallel to the second axis.

Gonza argues that MCF indisputably infringes the '405 Patent because every limitation of claim 1 is satisfied by the Iron Neck Alpha harness and all substantially similar neck harnesses. ECF No. 11 at 4. Gonza's briefing provides specific analysis of each of the elements of claim 1 in a table format, complete with pictures, captions, and illustrations identifying each of the elements of the claim are met.

MCF contends that it does not infringe the '405 Patent. The first limitation MCF disputes states "a first cranial strap having each end attached to the adjustable headband." MCF argues that the Iron Neck Alpha has "one end that terminates sewn under a webbing with buckles on either side." Therefore, *each end* of the strap is not attached to an adjustable headband. ECF No. 15 at 3. MCF also tries to distinguish its products from the third limitation, which states "a second cranial strap having each end attached to the adjustable headband." MCF argues that because the accused product has one end that terminates sewn under a webbing with buckles on either side, *each end* of the strap is not attached to an adjustable headband. *Id.* Last, MCF argues that its D-rings "are sewn in between the headband and straps . . . [and] not mounted to the adjustable headband as required by the claims of the '405 Patent." *Id.* at 4.

The Court agrees that none of the claim terms require additional construction to ascertain infringement. *In re Papist Licensing Digital Camera Patent Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015) (holding that claim terms are generally given their ordinary meaning). Neither party disputes the meaning of the claim terms as written. Therefore, the Court will proceed to the second step.

Assessing each of the limitations of the claim, the Court finds that Gonza has shown a likelihood of success in proving infringement. Reviewing the provided pictures and diagrams, in conjunction with the specifications and language of claim 1, the Court finds it is more likely than not that the Iron Neck Alpha embodies each of the claim limitations. Specific to the disputed limitations, the ends of the first and second cranial straps are attached to the adjustable headband. Furthermore, the vertical D-rings are indeed mounted to the adjustable headband. MCF's argument that they are not mounted because they are sewn in between the adjustable headband and cranial straps is without merit. The D-rings completely encircle the adjustable headband. And, the adjustable headband has stitching on either side of each D-ring to ensure it is secured, or mounted, to the adjustable headband. Therefore, the Iron Neck Alpha more likely than not embodies all the limitations of claim 1.

### 2.    *Validity*

An accused infringer can still defeat the factor of demonstrating a likelihood of success on the merits by raising a substantial question as to validity of the patent in suit. *See Wavetronix LLC v. Iteris, Inc.*, No. A-14-CA-970-SS, 2015 WL 300726, at *6 (W.D. Tex. Jan. 22, 2014). The burden of raising the substantial question of validity falls on the party attacking validity, and the burden of showing a reasonable likelihood that the validity attack will fail falls on the party seeking the injunction. *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1339–40 (Fed. Cir. 2003). The alleged infringer does not need to prove invalidity by the "clear and convincing" standard. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009). Instead, the Court must assess the merits of a preliminary injunction in light of the burdens the parties will bear at trial. *Id.*" "Thus, when analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger will be able to prove at trial, by

clear and convincing evidence, that the patent is invalid." *Id.* Importantly, the "clear and convincing" standard applies *only* at trial on the merits. *Id.* at 1379–80. "The fact that, at trial on the merits, the proof of invalidity will require clear and convincing evidence is a consideration for the judge to take into account in assessing the challenger's case at the preliminary injunction stage; it is not an evidentiary burden to be met preliminarily by the challenger." *Id.* at 1380. The Federal Circuit best described a defendant's burden to raise a substantial question when it said:

> Validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial. In other words, a defendant need not prove actual invalidity. On the contrary, a defendant must put forth a substantial question of invalidity to show that the claims at issue are vulnerable. Thus, a showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual invalidity.

*Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1355–56 (Fed. Cir. 2008) (internal citations and quotation marks omitted). If the defendant meets its burden to raise a substantial question as to the validity of the patent, the plaintiff bears the burden to show that its infringement claim will likely withstand the defendant's validity and enforceability challenges. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

MCF argues a substantial question of validity of the '405 Patent exists because of inventorship issues, definiteness, and disclosed prior art. ECF No. 15 at 5. For inventorship issues, MCF points to certain irregularities during the prosecution of the '405 Patent. For example, Mr. Hunt was first removed as an inventor in July 2020 but added back as an inventor in February 2021. *See* ECF No. 15-2 at 66–67, 101. For definiteness issues, MCF argues the term "mounted" does not appear in the specification. But the term "wherein" from claims 1, 10, and 19 was added during the prosecution of the claims. Accordingly, per MCF, the language "a

plurality of attachment members mounted to the adjustable headband, wherein each attachment member is mounted to the adjustable headband in a vertical orientation parallel to the second axis" requires claim construction to evaluate validity. Last, MCF highlights the 28 pieces of prior art reviewed by the examiner. In particular, MCF argues that Gonza did not dispute several claim limitations that the examiner asserted were disclosed by the prior art. For example, the Burnett, Titus, Miller, Hinds, Catron, and Levenston patents allegedly disclose certain limitations such that a *prima facie* case of obviousness can be made. ECF No. 15 at 5–6. Gonza rebuts, arguing that the examiner reviewed at least the 28 pieces of prior art and allowed the '405 Patent only after "the inventors convinced the examiner of its novelty and non-obviousness." ECF No. 11 at 10.

      Patents are presumed valid by statute. 35 U.S.C. § 282. Therefore, this court must consider MCF's arguments raise a substantial question of validity or enforceability in light of the clear and convincing standard MCF would bear *at trial*. MCF argues that potential inventorship issues exist. However, MCF's argument is a bare assertion that does not reach the level of raising a "substantial question." MCF states, in full, "there are various irregularities that occurred during the prosecution of the '405 Patent that raise questions as to the invalidity or enforceability of the '405 Patent, such as in the context of inventorship, as Mr. Hunt was first removed as an inventor in July 2020 (exhibit A at 101) but then inexplicably was added back as an inventor in February 2021. *Id.* at 66–67." ECF No. 15 at 5. MCF does not clear the hurdle or "presumption that the named inventors on a patent are the true and only inventors." *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 534 F.Supp.2d 705, 715 (S.D. Tex. 2007). Therefore, because MCF fails to provide any persuasive evidence of invalidity or unenforceability, "the very existence of the patent

8

satisfies [Gonza's] burden on validity." *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001).

MCF raises the issue of definiteness of the '405 Patent claims because of the phrase "a plurality of attachment members mounted to the adjustable headband, wherein each attachment member is mounted to the adjustable headband in a vertical orientation parallel to the second axis." MCF questions the use of "wherein" and states that Gonza will likely argue it is possible to infer what is meant by the limitation. The Court does not find an issue of definiteness in this phrase, nor that it requires extensive claim construction. The plain language is clear, just as MCF proposes Gonza will argue.

Finally, MCF points to the prior art that the examiner reviewed before approving the '405 Patent. In fact, the US Patent and Trademark Office (the "USPTO") issued multiple, thorough rejections on both prior art and written description grounds. ECF No. 11-4. While MCF cites to the prosecution history and noted prior art, it does not provide the details necessary to meet its burden of raising a substantial question. Instead, it seeks to relitigate the prosecution history, asking this Court to disturb the examiner's ultimate finding to grant the '405 Patent, without any specific reason for why the USPTO failed. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 ("When an attacker simply goes over the same ground travelled [sic] by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent.").

Ultimately, because Gonza has demonstrated that "success in establishing infringement is 'more likely than not,'" without any substantial question as to the validity of the '405 Patent, this factor supports the issuance of a preliminary injunction. *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (quoting *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed. Cir. 2012)).

### B.     Irreparable Harm

"[T]he central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages." *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90–91 (1974). However, parties that are market competitors may weigh heavily in the analysis of this factor. *See, e.g.*, *Brooktrout Inc. v. Eicon Networks Corp.*, No. 2-03-CV-59, 2007 WL 1730112, at *1 (E.D. Tex. June 14, 2007) (finding irreparable harm where the parties were competitors such that infringement caused loss of market share and damages were inadequate relief).

"[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, No. 2:06-CV-381-JRG, 2014 WL 8708239, at *8 (E.D. Tex. 2014) (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.,* 664 F.3d 922, 930 (Fed. Cir. 2012) (citations omitted)).

Gonza argues it will suffer (1) loss of market share, (2) price erosion, (3) damage in goodwill from MCF's inferior products, (4) entry into the market of additional infringers, and (5) the loss of Gonza's exclusive patent rights. ECF No. 11 at 11. Gonza claims MCF's strategy has been to undercut Gonza in the market with a lower price, less than half that of Gonza's Neck

Flex packages, but with inferior materials. *Id.* at 12. If no preliminary injunction were to issue, Gonza says it will be forced to elect between continued loss of market share or a reduced retail price to effectively compete. Because MCF uses inferior materials, Gonza is concerned the Iron Neck Alpha will damage the reputation of innovative neck exercise devices, particularly the Neck Flex products. Finally, Gonza posits additional infringers will enter the market. In fact, Gonza has already identified one third-party using MCF's stock photos of the Iron Neck Alpha to sell at a bulk price of $3.50 per "head harness." In sum, Gonza contends that given the two-party market, price erosion, reputational damage due to inferior materials, and loss of right to exclude, Gonza's irreparable harm cannot be remedied with monetary damages.

MCF rebuts that Gonza relies solely on conclusory assertions from the inventor Mr. Hunt, an interested party. MCF further argues that all of Gonza's arguments regarding irreparable harm are compensable in money damages. MCF also states that it is a solvent company, capable of satisfying any judgment at trial. Last, MCF argues that Gonza's claim of loss of goodwill and reputation is conclusory at best. In sum, MCF asserts that Gonza fails to demonstrate with clarity and sufficient evidence that it will suffer irreparable harm.

As stated by MCF, a showing of "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (quoting *Productos Carnic, C.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980)); ECF No. 15 at 7. Gonza carried its burden. Gonza put forth evidence, Mr. Hunt's Declaration (ECF No. 11-2), which clearly articulates, "Sales of Neck Flex had increased since we brought it to market until MCF began selling Iron Neck Alpha. Since then, Neck Flex sales have declined. Gonza's losses from Iron Neck Alpha's entry into the market include a loss of market share and market opportunities." ECF No. 11-2 ¶ 10. The loss of

11

sales and market share makes sense, particularly in light of the pricing difference between the products, cited blog posts, and customer reviews of the Iron Neck Alpha. *See id.* ¶¶ 4, 8, 9, 11. The Iron Neck Alpha is about half the price, or less than half the price of the Neck Flex when on sale. And, as noted by a couple product reviewers, "Not only does the Alpha Neck Harness act as a neck harness where you hang weights through a chain, but it **also has D rings on all 4 sides**." *Id.* ¶ 8 (emphasis in original). Noting that the Iron Neck Alpha is the same as the Neck Flex, apparently even down to the stitching pattern (*see id.* ¶ 7.), it comes as no surprise that a consumer would purchase the much lower priced option. *See id.* ¶ 8 ("Originally looking at a product from a competitor . . . when I found this, **which had all the same features** for a lower price. SOLD!") (emphasis in original).

Gonza need not provide exact figures to illustrate a loss (it would be a speculative guess nonetheless). Mr. Hunt's testimony reflecting an inverted "v" in sales, where the peak correlates to MCF's introduction of the Iron Neck Alpha to market sufficiently illustrates an irreparable harm and loss of market share, particularly when considering the dynamics of a two-player market. *See Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 2014 WL 8708239, at *10 (finding plaintiff's loss of the right to exclude is a harm not easily quantifiable with money damages and that the ongoing infringement shared a causal nexus to plaintiff's loss of market share and revenue); *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891, at *4 (E.D. Tex. Dec. 19, 2006) ("The parties to this case are direct competitors, and this fact weighs heavily in the court's analysis. Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market . . . [and the] availability of the infringing products leads to loss of market share"); *Brooktrout, Inc. v. Eicon Networks Corp.*, 2007 WL 1730112, at *1 (finding that as direct competitors, defendant's infringing products caused a loss

12

of market share that monetary damages would not relieve); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) ("the existence of a two-player market may well serve as a substantial ground for granting an injunction—e.g., because it creates an inference that an infringing sale amounts to a lost sale for the patentee"). MCF's arguments regarding potential hardship also cut against it here, as Gonza currently suffers the very same harm due to MCF's presence in the market: a difficulty in gaining product acceptance in the market, particularly due to the pricing discrepancy.

Price erosion runs concurrent with Gonza's loss of market share. Consumer reviews have indicated an inclination to purchase the lower-priced Iron Neck Alpha over the Neck Flex, citing the product as having "all the same features" but "for a lower price." ECF No. 11-2 ¶ 8. Gonza need not be forced into a loss of market share or lower price due to a direct competitor that likely infringes its product. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). Because consumers are faced with seemingly identical products at starkly different price points, Gonza's fear of price erosion is not a future or speculative harm, but an immediate and irreparable one. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361–62 (Fed. Cir. 2008) (finding lower prices from other generic producers of a product with whom plaintiff settled did not negate the market share and revenue loss plaintiff suffered at hands of the likely infringing defendant); *see also Purdue Pharma*, 237 F.3d at 1368 (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Bio–Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (loss of revenue, goodwill, and research and development support constitute irreparable

harm); *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975–76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated, and is evidence of irreparable harm).

Gonza's fear regarding the Iron Neck Alpha's inferior construction and its impact on customer goodwill is neither concrete nor immediate. While it is a real and substantial fear, Gonza provides no evidence that the Iron Neck Alpha's use of inferior materials has caused any loss of goodwill for either MCF or Gonza to date. *But see Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1554 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure."). However, loss of goodwill similarly runs with price erosion. Absent an injunction, Gonza indeed would be forced to erode its own price to compete in the market, particularly if it sought sales in a marketplace such as Amazon.com. Should Gonza reduce its price to compete, cutting into its profits and reducing its higher margins due to an alleged use of higher quality materials, any later effort to restore the original price would result in a loss of customer goodwill. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

Gonza also produced sufficient evidence of another third party that is selling an allegedly infringing device using one of MCF's stock photos of the Iron Neck Alpha. ECF No. 11 at 14; ECF No. 11-2 ¶ 17. Somehow the third-party seller is marketing the same product in bulk at a price of $3.50 each, leading to further potential price erosion. Accordingly, absent an injunction against MCF, Gonza will likely be forced to pursue infringement actions against multiple sellers because MCF opened the door.

Finally, Gonza has a right to exclude. Embodied in that right is an ability to protect one's product and establish a controlling market share. To the Court's knowledge, Gonza has not licensed its patent to any other sellers. Instead, it has focused on controlling a new portion of the market with its innovative patented design. *See Celsis In Vitro*, 664 F.3d at 930–31 ("During the growth stage of a product, it is particularly crucial to be able to distinguish oneself from competitors. This includes building the brand, expanding the customer base, and establishing one's reputation and leadership in the market."). Gonza is entitled to exclude alleged infringers and protect its market share to avoid otherwise irreparable harm. In sum, Gonza has been irreparably harmed and will continue to be harmed absent a preliminary injunction.

### C.     Balance of Hardships

The Court concludes that this prong weighs in Gonza's favor. MCF's proposed hardships depend on its presumption that Gonza did not show a likelihood of success on the merits. But this is contrary to the Court's ultimate findings. Additionally, MCF argues that it will be forced to restart the difficult process of product acceptance after trial, and at a competitive disadvantage. ECF No. 15 at 10. Thus, MCF argues it would suffer loss of trust and confidence that would hamper future sales of the Iron Neck Alpha and have an immediate negative impact on MCF's other products. *Id.*

In contrast, Gonza alleges that it has expended considerable time and resources to develop and obtain the '405 Patent, whereas MCF simply "reverse engineered [Gonza's patented neck exercise devices], and flooded the market with inferior copies." ECF No. 11 at 15. Furthermore, Gonza emphasizes that it solely sells products in the Neck Flex line of neck exercise equipment, while MCF sells multiple other exercise devices that would be unaffected by the requested preliminary injunction. *Id.* at 16.

Gonza will suffer greater hardship given its narrow product focus. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("requiring [a patentee] to compete against its own patented invention . . . places a substantial hardship on [the patentee]"). Upon initial impressions, MCF's entrance in the market provided nothing more than a mere copy of the Neck Flex, but at a lower price. *See Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected"). While MCF's concerns and potential hardships are valid, they are all contingent on a future finding that the '405 Patent is invalid. This Court is of the belief that Gonza will likely succeed on the merits. Furthermore, MCF's potential future harms are current harms plaguing Gonza.

MCF benefits from a more diverse product line, while Gonza focuses solely on the Neck Flex equipment line. Inherently, Iron Neck Alpha's maintenance in the market significantly impacts Gonza's business, while its removal is less impactful to MCF. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d at 1156 (finding that even in the reverse, "[a] party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one"). Moreover, MCF will be afforded certain financial safeguards given the bond requirement detailed below. On the other hand, absent this preliminary injunction, Gonza has no protection. Excluding the bond from the analysis, the balance of hardships tips in favor of Gonza. But with the bond, the scale tips decidedly in Gonza's favor.

### D.   Public Interest

The public interest favors enforcement of patent rights. *Celsis In Vitro*, 664 F.3d at 931. *See also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long

acknowledged the importance of the patent system in encouraging innovation."). The incentive to research and develop new products "would be adversely affected by taking market benefits away from the patentee and giving them to the accused infringer." *Celsis In Vitro*, 664 F.3d at 932. *See also Smith v. Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983) ("Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.").

Plaintiff argues that a preliminary injunction serves the public interest because it ensures protection of its patent rights and encourages further progress of science and useful arts. ECF No. 11 at 16–17. MCF counters that public policy favors ridding the economy of invalid patents that impede competition and mitigate incentives to innovate. ECF No. 15 at 10. MCF further argues that Plaintiff is "attempting to enforce a patent that is not infringed." *Id.* at 11. Therefore, according to MCF, "the public has a compelling interest in allowing Defendant to continue providing its product." *Id.*

This Court, as noted above, found that Gonza has shown a likelihood of success in proving infringement while MCF failed to raise a substantial question as to the validity of the '405 Patent. Consequently, the Court finds that the public interest is best served by protecting Gonza's patent rights and allowing it to exercise its right to exclude. A finding in prior factors favoring an injunction does not necessarily automate a finding in favor of an injunction for the public interest factor. However, when the competing interests rest on opposing foundations regarding the validity and enforceability of a patent, a court's findings that a patent is likely valid and infringed consequently favor the public's interest in protecting the patent and affording the patentee its right to exclude. *See MGM Well Srvs.*, 505 F. Supp. 2d at 379–80 ("The public

Case 6:21-cv-00771-ADA Document 17 Filed 12/01/21 Page 18 of 19

interest is best served by protecting patent rights and enforcing the applicable laws."). Accordingly, the Court finds all four factors favor Gonza's request for the issuance of a preliminary injunction.

### E. Bond

Under the Federal Rules, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Accordingly, the Court ORDERS that the preliminary injunction shall not issue or be effective until the posting of a bond by Gonza LLC in the amount of twenty-five thousand dollars ($25,000.00 U.S.). Fed. R. Civ. P. 65(c); *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990). The Court finds that this amount is appropriate to protect MCF in the event that the injunction is later determined to be in error.

### F. Trial Date

As discussed in the hearing, the Court finds that an advanced trial date is in the best interests of all parties. Therefore, the parties are ORDERED to meet and confer and propose a scheduling order by December 6, 2021, with trial set to begin October 24, 2022. Fact discovery will also open, effective immediately.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff Gonza LLC's Motion for a Preliminary Injunction.

IT IS THEREFORE ORDERED that Mission Competition Fitness Equipment LLC is hereby enjoined, pending a final determination on the merits, from promoting, marketing, advertising, selling, and offering for sale the Iron Neck Alpha Harness.

IT IS FURTHER ORDERED that the preliminary injunction issued herein shall be effective upon the posting of a bond by Gonza LLC in the amount of twenty-five thousand dollars ($25,000 U.S.). Fed. R. Civ. P. 65(c).

SIGNED this 1st day of December, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE