IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GONZA, LLC,<br>   *Plaintiff* | § § § § | |
| -vs- | § § | W-21-CV-00771-ADA |
| MISSION COMPETITION FITNESS<br>EQUIPMENT LLC,<br>   *Defendant* | § § § § § | |

## CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendant Mission Competition Fitness Equipment LLC's ("MCF") Opening Brief ("Defendant's Opening") (ECF No. 23), Plaintiff Gonza, LLC's ("Gonza") Responsive Brief ("Plaintiff's Response") (ECF No. 24), Defendant's Reply Brief ("Defendant's Reply") (ECF No. 25), and Plaintiff's Surreply Brief ("Plaintiff's Surreply") (ECF No. 26). The Court provided the parties its preliminary constructions in advance of the *Markman* hearing. The parties subsequently indicated to the Court that they did not wish to argue any of the terms, with the understanding that the parties preserve and do not waive any of the positions set forth in their claim construction briefing. The Court accordingly canceled the *Markman* hearing.

The Court adopts its preliminary constructions to be its final constructions and enters those final constructions now.

### I.  BACKGROUND

Plaintiff Gonza filed this lawsuit on July 28, 2021. ECF No. 1. Plaintiff asserts that Defendant MCF has infringed and continues to infringe at least claim 1 of U.S. Patent No. 11,007,405 (the "'405 Patent"). *Id.* ¶¶ 26, 27. The name of the '405 Patent is "The Neck Exercise Device and System." *Id.* ¶ 13; ECF No. 1-1 at 1.

1

The patent applicant created the neck exercise equipment in an effort to provide greater mobility than other existing neck exercise devices. ECF No. 1 ¶ 17. The patent applicant accomplished this goal primarily through the inclusion of vertically oriented D-rings on each quadrant of the device. *Id.* Other devices only contain chains where weight can be attached, while the D-rings in the '405 Patent also allows for resistance bands to attach for a greater range of exercises. *Id.*

## II.     LEGAL STANDARD

The general rule is that claim terms are given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d at 1313.

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). The specification must contain "sufficient disclosure to inform a person of ordinary skill with reasonable clarity that the inventors

possessed the claimed invention." *Ariad Pharm. Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010); *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008). However, while the claim does not have to use the exact wording in the specification, "the specification must contain an equivalent description of the claimed subject matter." *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571–72 (Fed. Cir. 1997).

Although extrinsic evidence can also be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

Further, "when a patent uses two different terms in the claims, the general presumption is that the two terms have different meanings, and it is improper to substitute one term for the other." *Chicago BD. Options v. Intern. Securites Exchange*, 677 F.3d 1361, 1369 (Fed. Cir. 2012); *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim

term," and "clearly express an intent to define the term." *Id.* To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent "a clear disavowal of claim scope." *Id.* at 1366. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### III.    LEGAL ANALYSIS

#### A.    Term #1: "Slide Portion"

| Term | Gonza's Proposed Construction | MCF's Proposed Construction |
|---|---|---|
| "Slide portion" <br><br> Proposed by Defendant | Plain-and-ordinary meaning. | Indefinite. <br><br> Alternatively, "triglide slide" |

**The Parties' Positions:**

MCF's position is that the term "slide portion" is indefinite. *First*, MCF argues that "the phrase 'slide portion' did not appear in the claims when the application that became the Patent-in-Suit was filed. The phrase was introduced during prosecution, but the patent applicant did not provide any support for the specification when it was added to the claims." ECF No. 23 at 2.

*Second*, MCF argues that there is no indication that there is a definition of the term that "would be known by one of ordinary skill in the art." ECF No. 23 at 2. MCF argues that the extrinsic evidence does not suggest a plain-and-ordinary meaning. ECF No. 23 at 2. Particularly, MCF argues that the dictionary definitions do not suggest a plain-and-ordinary meaning: "a sliding movement or action," "a smooth, usually inclined surface or track for sliding," or "a part that operates by sliding" from the American Heritage Dictionary. ECF No. 23-7 at 3. Also, from the Merriam-Webster Dictionary: "sliding part or mechanism" such as "(1): a moving piece (as

4

the ram of a punch press) that is guided by a part along which it slides (2): a guiding surface (as a feeding mechanism) along which something slides." ECF No. 23-8 at 4.

*Third*, MCF argues that if the Court decides "slide portion" can be defined, it should define it as "triglide slide." MCF contends that the dictionary definitions only refer to a triglide slide and this means it is the only potential definition for a "slide portion." ECF No. 23 at 3.

Gonza's position is that the court should adopt the plain-and-ordinary meaning of "slide portion." ECF No. 24 at 2. *First*, Gonza argues that "there is no requirement that the specification use the exact words found in the claims." ECF No. 24 at 2. The specification must merely "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, the [inventor] was in possession of the invention." *Carnegie Mellon Univ.*, 541 F.3d at 1122. Plaintiff states that if the patent fulfills this standard, the written description requirement is satisfied. ECF No. 24 at 2.

*Second*, Gonza argues that it provides two examples of slide portions that are "fully consistent with several dictionary definitions cited on page 3 of MCF's Brief that define sliding as a sliding movement or a sliding part of a mechanism". ECF No. 24 at 3. Additionally, the examples are found in the U.S. Provisional Application "to which the '405 Patent claims priority and incorporates by reference." ECF No. 24 at 3.

*Third*, Gonza argues that the words "e.g." and "such as" indicate that a triglide slide is not the only type of "slide portion" referenced by the term. ECF No. 24 at 4. Therefore, Gonza urges the Court to adopt the plain-and-ordinary meaning of "slide portion." ECF No 24 at 4–5.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court finds that the proper construction for this term is plain-and-ordinary meaning for at least the following reasons. *First*, Plaintiff does not contend that the patentee acted as his own

5

lexicographer or that there was a disclaimer during prosecution. Therefore, neither exception to the general rule that a term should be construed according to its plain-and-ordinary meaning applies. *Thorner*, 669 F.3d at 1365.

*Second*, the patent must merely "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, the [inventor] was in possession of the invention." *Carnegie Mellon Univ.* 541 F.3d at 1122. There is no requirement that the specification must use the exact words in the claim. *See Id.* However, "the specification must contain an equivalent description of the claimed subject matter." *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997). The Court agrees that the plaintiff satisfied this requirement in the specification of the '405 Patent, column 2 lines 57-64: "at least one portion of the chin strap can also include an adjustment member, such as a 1 inch plastic Wide Mouth Heavyduty Triglide Slide (made by YKK), or the like. In operation, a first chin strap portion can be fed through an adjustment member of the other chin strap portion." The referenced adjustment member describes a slide portion.

*Third*, the dictionary definitions provided by MCF are consistent with the examples of slide portions presented in the specification: (1) "The headband 102 includes an adjustment member, which can include a slide (*e.g.*, a 2 inch plastic triglide slide or the like)…," '405 Patent, 2:27-30; and (2) "At least one portion of the chin strap can also include an adjustment member, such as a 1 inch plastic Wide Mouth Heavyduty Triglide Slide (made by YKK), or the like." '405 Patent, 2:55-58. An adjustment member, as described, is a part that "operates by sliding" and "a moving piece that is guided by a part along which it slides." ECF No. 23-7 at 3; ECF No. 23-8 at 4.

*Fourth*, the Court agrees with the plaintiff that the words "e.g." and "such as" connote multiple examples of slide portions, and thus, the definition of "slide portions" is not narrowed to triglide slides alone.

Therefore, for the reasons above, the Court finds that plain-and-ordinary meaning is the correct construction for this term.

**B.      Term #2: "Each end [of the first/second cranial strap] attached to the adjustable headband"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "Each end [of the first/second cranial strap] attached to the adjustable headband"<br><br>Proposed by Defendant | No construction necessary. | Each end [of the first/second cranial strap] is directly stitched to the adjustable headband. |

**The Parties' Positions:**

MCF contends that the term "each end [of the first/second cranial strap] attached to the adjustable headband" should be understood as "each end [of the first/second cranial strap] is ***directly stitched*** to the adjustable headband." *First*, MCF argues that the specification defines "attached" as "stitched together" when it uses "(e.g., stitched together)" after "attached to each other." ECF No. 23 at 4. The '405 Patent also supposedly uses stitching as an example for attachment, which MCF uses to support this construction. '405 Patent, 3:1-3.

*Second*, MCF argues that the prosecution history supports an interpretation of stitching as the means of attachment. ECF No. 23 at 4. According to MCF, "the patent application distinguished the *Burnett* patent from the claims by noting that the straps are stitched together without use of fasteners/rivets to avoid exposing the user to fasteners or rivets." ECF No. 23 at 4. MCF argues that the patent examiner found that the attachment members are directly attached to the headband and that the applicant did not object to this finding. ECF No. 23 at 4.

7

***Third***, MCF argues that the extrinsic evidence supports its construction of direct attachment through dictionary definitions: "to fasten, secure, or join," and "to fasten or join one thing to another." ECF No. 23 at 5.

Gonza contends that the term "each end [of the first/second cranial strap] attached to the adjustable headband" requires no construction. ***First***, Gonza disagrees that attachment is limited to stitching because the '405 specification uses attached and stitched differently. ECF No. 24 at 5. Gonza's argument relies on law stating that "when a patent uses two different terms in the claims, the general presumption is that the two terms have different meanings, and it is improper to substitute one term for the other." *Chicago BD. Options*, 677 F.3d at 1369; *CAE Screenplates, Inc.*, 224 F.3d at 1317 ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

***Second***, Gonza argues that the specification consistently states that the cranial strap is attached to the headband. ECF No. 24 at 6. According to MCF's extrinsic evidence, attachment can mean fastened, secured, or joined. ECF No. 24 at 6. Gonza argues that none of the definitions mention stitching or direct attachment. ECF No. 24 at 6.

***Third***, Gonza argues that the intrinsic evidence does not support the term "directly stitched." ECF No. 24 at 6. As Gonza states, where the '405 Patent uses the word stitching in the first example given by MCF, it is in reference to the attachment of the first and second cranial straps and not the attachment of the cranial straps to the headband. ECF No. 24 at 6. In the second example given by MCF, it is "a discussion of how each individual component of the head harness (the headband, or the straps) can be manufactured by sewing padding and backing material together with heavy duty thread, not a discussion of how the cranial strap is attached to the headband." ECF No. 24 at 7.

***Fourth***, Gonza argues that the prosecution history does not support the term "directly stitched." ECF No 24 at 7. Gonza's argument results from their interpretation of the patent prosecutor's reference to the difference between the '405 Patent and the *Burnett* patent. ECF No. 24 at 7. Gonza interprets the reference to mean the requirement in the '405 Patent that the first and second cranial straps be stitched to each other and not a requirement that the cranial straps be stitched to the headband. ECF No 24 at 7. Gonza argues that the applicant did not respond because there was no reference to the attachment of the cranial straps and the headband. ECF No 24 at 7.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court finds that the proper construction for this term is plain-and-ordinary meaning and that no further construction is necessary for at least the following reasons. ***First***, Plaintiff does not contend that the patentee acted as his own lexicographer or that there was a disclaimer during prosecution. Therefore, neither exception to the general rule that a term should be construed according to its plain-and-ordinary meaning applies. *See Thorner*, 669 F.3d at 1365.

***Second***, this Court recognizes that "when a patent uses two different terms in the claims, the general presumption is that the two terms have different meanings, and it is improper to substitute one term for the other." *Chicago BD. Options*, 677 F.3d at 1369; *CAE Screenplates, Inc.*, 224 F.3d at 1317 ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."). Attached and stitched are used differently in the specification. In claim 8: "the first cranial strap and the second cranial strap are *attached* to each other," and in claim 9: "the first cranial strap and the second cranial strap are *stitched* to each other." Therefore, the terms have different meanings.

***Third***, the Court agrees with the plaintiff that none of the dictionary definitions provided by MCF in their opening brief require "stitching" or direct attachment. The Heritage Dictionary definition of "to fasten, secure, or join" and the Merriam-Webster Dictionary definition of "to fasten or join one thing to another" do not require stitching or direct attachment. ECF No. 23-6 at 2; ECF No. 23-11 at 1. They merely require the joining, securing, or fastening of the two things together by some means.

***Fourth***, the intrinsic evidence does not demonstrate that the term stitched should be substituted for attached. The two examples referenced by MCF do not reference the attachment of the cranial straps to the headband. The first example in column 2, lines 23-26, says: "the first cranial strap 106 and second cranial strap 108 can be attached to each other (e.g., stitched together) at a location where the two cross at the crown of the head harness." The second example in column 2, line 66 through column 3, line 3 says: "the inside surfaces of the head harness can have padding, such as a 4 mm neoprene with plain backing (or other suitable material) applied (e.g., stitched). The headband and straps can be assembled (e.g., stitched) with heavy duty thread." The first example clearly references the attachment of the first cranial strap and second cranial strap. The second example clearly references the components of the head harness. Therefore, the intrinsic evidence does not support the defendant's construction.

***Fifth***, the prosecution history does not support the term "directly stitched." ECF No. 24 at 7. The prosecution history shows that the applicant distinguished the Barnett patent from this patent by pointing out that the "straps" in the Barnett patent are not stitched together. ECF No. 24 at 7. This distinction was a reference to the requirement that the straps in the '405 Patent be stitched together. The only explicit requirement for stitching in the '405 Patent is between the first cranial strap and the second cranial strap. '405 Patent, 2:66-3:3. The patent applicant simply

was referring to this specific requirement. '405 Patent, 2:66-3:3. The patent applicant was not admitting that the cranial straps and the headband must be stitched.

Therefore, for the reasons above, the Court finds that plain-and-ordinary meaning is the correct construction for this term.

### C. Term #3: "Mounted"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "Mounted"  Proposed by Defendant | Plain-and-ordinary meaning. | Indefinite. |

**The Parties' Positions:**

MCF asserts that the term "mounted" is indefinite. ECF No. 23 at 5. ***First***, MCF argues that the specification and prosecution history do not support a plain-and-ordinary meaning of "mounted." ECF No. 23 at 6. Specifically, MCF argues that the specification does not mention or explain the meaning of "mounted" and is therefore unbounded and indefinite. ECF No. 23 at 6.

Additionally, MCF states that Gonza attempted to change the claim limitation to say that "each attachment member is mounted in between the adjustable headband and at least one of the first cranial strap and the second cranial strap in a vertical orientation." *See* ECF No. 23-1 at 4. According to MCF, Gonza also asserted that the attachment members are mounted in between the headband and straps "to avoid exposing the user to the material of the attachment member." *Id.* at 5. The patent examiner disagreed and stated that the specification did not support the language. *See* ECF No. 23-2 at 7. Gonza did not disagree with the patent examiner and merely made the suggested changes, which MCF understands as accepting the objection. ECF No. 23 at 7.

***Second***, MCF argues that the extrinsic evidence does not support a plain-and-ordinary meaning for the term "mounted." *Id.* MCF lists several dictionary definitions and asserts that the requirements for what it means to "mount" something differ based on the various definitions. *Id.* at 8. MCF argues that Gonza equates "mount" with "attach" but that "attach," as previously discussed, has different meanings. *Id.* Therefore, MCF argues that there is no definition of "mounted" that would "inform those skilled in the art about the scope of the invention with reasonable certainty." *Dow Chem. Co. v. Nova Chems. Corp (Canada)*, 803 F.3d 620, 633–634 (Fed. Cir. 2015).

Gonza's proposed construction of the term "mounted" is its plain-and-ordinary meaning. ECF No. 24 at 8. ***First***, Gonza argues that the specification contains "sufficient disclosure to inform a person of ordinary skill with reasonable clarity that the inventors possessed the claimed invention." *Ariad Pharm. Inc.*, 598 F.3d at 1352; *Carnegie Mellon*, 541 F.3d at 1122. According to Gonza, the specification states the specific areas where the attachment members may be placed and how they are mounted. ECF No. 24 at 8. Gonza argues that these descriptions provide a person of ordinary skill with reasonable clarity and that the description provides one way of mounting the attachment to the headband. ECF No. 24 at 8–9.

Further, Gonza argues that the specification does not create ambiguity as to the definition of "mounted." ECF No. 24 at 9. Gonza states that the examiner's objection to the language presented by Gonza "was to the recited relationship between the attachment member and the first and second cranial straps, not to the mounting of the attachment member to the adjustable headband." *Id.*

***Second***, Gonza disagrees with MCF that the extrinsic evidence supports ambiguity. ECF No. 24 at 9. "While MCF has submitted several purportedly conflicting dictionary definitions of

12

"mounted," those definitions must be considered in light of the intrinsic evidence, or they are unlikely to result in a reliable interpretation of the claims." *Id.*; *Phillips*, 415 F.3d at 1319. Gonza urges this Court to consider the definitions in light of the '405 Patent and contends that several of the definitions would not apply to the plain-and-ordinary meaning of "mounted" in such a context. ECF No. 24 at 9–10.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court finds that the proper construction for this term is plain-and-ordinary meaning for at least the following reasons. ***First***, Plaintiff does not contend that the patentee acted as his own lexicographer or that there was a disclaimer during prosecution. Therefore, neither exception to the general rule that a term should be construed according to its plain-and-ordinary meaning applies. *Thorner*, 669 F.3d at 1365.

***Second***, the Court agrees with the plaintiff that the specification provides "sufficient disclosure to inform a person of ordinary skill with reasonable clarity that the inventors possessed the claimed invention." *Ariad Pharm. Inc.*, 598 F.3d at 1352; *Carnegie Mellon*, 541 F.3d at 1122. The specification describes a way of mounting attachment members to the adjustable headband: "the attachment members or points can include a 2 inch welded metal D ring (e.g., steel D ring) or other suitable attachment point. Each attachment point 110-116 can be attached to the headband 102 with webbing passing through the attachment point and being secured (e.g., stitched) at each end of the webbing to the headband 102." '405 Patent, 2:30-35. Reading this text, a person of ordinary skill would be informed with "reasonable clarity" that the inventors do, in fact, possess the claimed invention. The language clearly identifies how the attachment members can be mounted to the adjustable headband.

***Third***, the Court agrees with the plaintiff that the extrinsic evidence does not support ambiguity. Definitions do not always correctly convey the intended meaning in the patent. *Phillips*, 415 F.3d at 1318. The definitions must be considered in light of the patent. *Id.* at 1319. When considered in light of the patent, the definitions are significantly narrowed and do not make the term "mounted" indefinite.

Therefore, for the reasons above, the Court finds that plain-and-ordinary meaning is the correct construction for this term.

## IV.   CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below as its final constructions.

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| "Slide portion"<br><br>Proposed by Defendant | Plain-and-ordinary meaning. | Indefinite<br><br>Alternatively, "triglide slide" | Plain-and-ordinary meaning. |
| "Each end [of the first/second cranial strap] attached to the adjustable headband"<br><br>Proposed by Defendant | No construction necessary. | Each end [of the first/second cranial strap] is directly stitched to the adjustable headband. | Plain-and-ordinary meaning.<br><br>No construction necessary. |
| "Mounted"<br><br>Proposed by Defendant | Plain-and-ordinary meaning. | Indefinite. | Plain-and-ordinary meaning. |

SIGNED this 20th day of May, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE